Co v. Nat'l Liability & Fire Ins. David Tartaglio. I'm here for the FLE, Landmark American Insurance Company. I'd like to tie into the specific facts of this case. As your honors pointed out, if the truck is driving down the street and tips over and something happens involving the equipment, that plainly is not a rise out of the operation of the pump. And in this case, that's a little more extreme, but this case, the same conclusion applies, because when we look at what was happening here, this repairman, what did he actually do? He came, he welded the cover of the pump motor. The pump was not pumping. It was not spraying. So he welded the cover. It looked like it was ready to go. We have stipulated facts. He did not engage the pump. What he did was he turned the pump motor on to see if it was operational. Well, what he should have done is he should have made the guy that repaired it check it and let him get third-degree burns. That's why we have insurance. So we know what he should have done. But he wasn't doing a job. He wasn't doing a job. Right. He was not operating the pump in that sense. And I'll even go this far. This is not a question of maintenance versus operation. It is conceivable that in the course of maintenance, repair work, you could be operating the equipment. That's possible. That's not this case, because he was not in any way operating the pump. He covered the top. He checked it. And he pushed the button to see if it would work. So in that sense, this is not that far removed from the case of driving the truck down the road and something falls off. This is not an exclusion for running the pump or bumping into the pump or having the pump fall off. It's operation. Well, if the truck with the pump affixed, if you drove it to a job site and you parked it, and then the person operated the pump and was injured, would that injury be covered by Landmark's policy? It could be. On that scenario, it could be. It sounds like it would clearly be. I don't know. I'd have to think that through to be honest with you. But that's why you have a CGL policy, for goodness sake. Well, we do have a CGL policy, again, for the operation of the pump. Exactly. But the pump is not operating here. It was sitting in the lot. No, but in the hypothetical I gave you, the car is not operating, and you stop at a job, and you're operating the pump and doing the job. And you don't want to say it would be covered. You want to say it could be covered. But you said you're operating the pump and doing the job. Now, here's what I said. I wrote it down. So I'm going to repeat it again, and I'll give you a second chance. If a truck with a pump affixed to it drove to a job site and parked, and a person then operated the pump and was injured, would that injury be covered by Landmark's general liability policy? Covered. Thank you. I'll give you that. Okay? But again, let's talk about why that's different from this case. The insurance policy uses the term operate. And isn't the plain dictionary definition of operate means to cause the function? So going back to your explanation of what happened here, when he pushed the button, he caused it to function. That's operation within the meaning of the language of the policy, no? I would respectfully disagree with that, because operation, in common parlance, means putting it to its intended use, its function. Checking it to see if it will turn on, if it will work, is not part of operation. That's why the other example here where Your Honor said if you go to – it doesn't necessarily have to be at a job site in use, although that's a clear example. But if you are in the repair shop and you're just checking it with a repairman who has nothing to do with pumping concrete or asphalt onto roofs, that's not what he does. He's not connected with that. Now, again, if we stretch out, we're in hypothetical land. If during the course of the maintenance repair he had to run it for a while and pump concrete asphalt to see if it was working, that might be different. But we're confined to what actually happened here with the stipulated facts. He did not engage the pump. It was not part of operation. So operation means something more than turning on or running or checking. So let me understand. He welded something and it had nothing to do with the operations of the pump or the maintenance of the pump, just welded a piece onto the machine. And then he decided to turn the pump on. For what reason, we have no idea. So he really wasn't doing maintenance then because he didn't do anything to repair the pump. Correct? No. He was called out because there was a noise in the pump. He figured out the noise was called because it wasn't welded properly. Right. So he welded it. And then he decided to turn on the pump for God knows what reason. To see if it was still making the noise, right? Oh, to see if it was still making the noise. That was what he was called out in the first place. He was testing it to see if the fix worked. And then that's your maintenance exclusion. We exclude maintenance, right? With the car back for operations in the course of maintenance. Okay, so I'm going to ask you this question. What if we decide that neither one of you has liability and you've already paid the money for the settlement of the case? You're both out of luck, right? First of all, I want to thank both of you for deciding to settle the underlying case and split the difference. I think that's very professional, okay? And your company should be proud of that. But maybe you both lose. I don't think that's the outcome, but I understand the point. But I asked you the question. I didn't finish it. So what happens if we find neither of you have liability? Then what happens? Are you going to sue somebody else? I don't think we have anyone else to sue. I don't think so either. I think we'll both take our losses in that scenario. To address one more thing. Under your analysis, if you park at a job site and the operator pushes a button, but before he gets a chance to, you know, take care, spray the roof or whatever the correct terminology is, but he just pushes that button, that's part of operation. They're at a job site, right? He's pushing the button for its intended function. But then for this situation, somebody's out to repair it. They push the very same button and there's no liability. Exact same conduct, but liability in one instance, no liability in the other. Is that your hypothetical? I'll accept that because, again, in the context of operations. Their exclusion is for operations. Our carve back is for operations. Again, it's not for running, testing, those kinds of things. So we have to look at the context, ultimately, of what's happening. And so if you have someone who is going to operate it and once the moment he starts, she starts that. But the problem is there isn't anything in the policy language that tells us to consider the context, look at it, look at the intent of the person who pushes the button. There isn't anything that tells us to do that. Well, the policy tells us, both policies say operations of this particular enumerated equipment. So it's not operation of the vehicle as a whole. It's an operating these portions of what are part of the mobile equipment definition. In this case, the pump. So ultimately we're zeroing back to the question of was this part of the operation of the pump or was it incidental to that in the fact that a repair person happened to get hurt by the pump because he pressed the button and they didn't have the proper cover on the top. So at the end, that's why I think the district court was correct to conclude that when you look at these particular facts, this person doing what he did, this does not fall in the rubric of the operations of the pump. Thank you. Thank you. We normally don't raise this because I'm assuming the parties know about it. It's all over our website and it's fairly well known, but we have a very vibrant mediation program with skilled mediators. And so if the parties are interested in it, you can send the court something. Tell us you're interested in that. Thank you very much, Your Honor. I think that the discussion of the hypotheticals that you just engaged in with Landmarks and that is, indisputably, Mr. Clark was injured because he turned on the pump. Operation means functioning. The pump engaged and spewed tar out of it. There was injury arising out of operation of the pump. And what the hypotheticals illustrate is that instead of applying that policy language, the district court read in restrictions that do not exist. Well, they have an exclusion for maintenance of equipment, right? And if their exclusion overrides otherwise coverage, just like your argument, then he didn't have any coverage either. The exception restores the coverage that is otherwise excluded for maintenance under the Landmark policy. And here, some of the hypotheticals were, well, if someone was at the yard, Mr. Clark was at the yard, he turns on the pump to test it and to see if it's operating, and through negligence, whatever, doesn't check that it's disengaged of the spraying equipment, and he gets sprayed, well, counsel said if he had done that and had to see that it was operating for a certain amount of time, then it would be covered under the CGL. Well, that's operations. Because it's operating. And because the injury. So is his maintenance, is that an exclusion or just a limitation? That is an exclusion with an exception. And the exception is? And the exception is, this is the way it looks on the printed page. This, in the Landmark policy, this policy does not cover maintenance. But this exclusion does not apply to injury arising out of the operation of pump spraying equipment. Right. And let me just read you what the district court said. Because the district court, was it Judge Thayton in this case? Yes. She tethered her analysis to the stipulated facts in concluding that it was maintenance. And she said, set forth in the party's joint stipulation, after completing his repairs, Clark pulled the start cord to see if the tars in the tank was hot enough. I'm skipping a few words here in the interest of time. But he did it to check to see if it was secure and operational. The only reasonable inference is that Clark was injured while performing a maintenance role. This conclusion is further supported by the complete absence of evidence suggesting that Clark had the intent, ability, or permission to operate the Ford tanker for any non-maintenance-related purposes. So it doesn't really help to go back to the policy language in a way, because the district court understood the policy language, but she found that the scope of his conduct fell within maintenance. And I think that's a misapprehension of how an exception to an exclusion works in a policy and a reading in of terms that are not in that exclusion in the CGL policy. I kind of think that what this really comes down to is the person that got these policies really intended to cover this sort of activity, and maybe the insurance companies could do a little better job writing things. There's always room for improvement, I suppose. Well, I think this is an example where there could be some improvement. I think you're in overtime, unless either of my colleagues have any questions. Thank you, Your Honor. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Nguyen, Bataillon